Greinstein v. Granite Services Intl. Did I get that right? Greinstein. Apologies. You know what, you actually did have it right. It's Greinstein. Oh, there we go. Alright, so Mr. Roth on behalf of Granite Services will lead off today, whenever you're ready. May it please the Court, Yakov Roth on behalf of Field Court. Your Honors, this is a bit of an unusual appeal because the plaintiffs really aren't defending the district court's analysis. To be fair, that's because the district court adopted an interpretation of the regulations that the plaintiffs had not really advanced, and for that matter, an interpretation that no other court has ever adopted or to our knowledge even suggested prior to the decision below. But that's the interpretation that's now teed up for this Court's review. And because that interpretation is legally erroneous, the Court should reverse. I think the best way to set up the issue, explain it, is really just to walk through the text of the relevant regulations. And there are really three sections that are relevant to the analysis. The first is Section 602A, which is the general rule that defines what it means to be paid on a salary basis within the meaning of this part. And what that regulation provides is the employee needs to be paid on a weekly or less frequent basis. It needs to be a predetermined amount, and it needs to be not subject to reduction based on the quality or quantity of the work performed. The idea is to guarantee a stable base on a weekly basis for the employee. I will just flag that the 602A refers to the weekly amount constituting all or part of the employee's compensation. So this weekly base is a floor, it's not a ceiling, and we'll come back to that when we get to Section 604A. The second provision that's relevant is Section 602A.1, which says that subject to certain exceptions that follow, an exempt employee—I'm just going to read it—must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. But exempt employees need not be paid for any work week in which they perform no work. And that no work, no pay principle has been a feature of these regulations going back 75 years, since they were initially promulgated. The idea is that if an employee takes off, let's say, two weeks for unpaid vacation, or let's say the employer shuts down business for a month because of COVID, or let's say the employee turns down a job, which these plaintiffs were entitled to do. They had a certain amount of flexibility over which jobs they wanted to take on. If they don't work at all for the week, they don't get paid for the week. That doesn't mean they're not salaried employees. It just means they didn't work that week. And finally, Your Honors, we go to 604A, which says, An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis. So this language, I think, closes the loop on that all or part reference in 602. 602A said you've got a floor, but you can go beyond. This then spells out when and how you can go beyond. It's fine to pay more than the weekly minimum so long as you are guaranteeing that minimum weekly amount on a salary basis. And this is really quite common if you think about, let's say, a vice president of sales who may get a salary plus a commission, or if you think, for that matter, of a law firm associate who gets an annual salary but may be entitled to a bonus if he hits a billable hours target for the year. There's still salaried employee. And that gives the employer flexibility to offer extras and incentives that are appropriate for the particular industry that we're dealing with. So you put all this together, and I think it's pretty clear that Field Corps' plan satisfies these requirements. Field Corps offered the plaintiffs and the plaintiffs accepted. A weekly salary was predetermined, was not subject to reduction, whether the employee worked one hour that week or 40 hours that week. Now, the employees did not get paid if they didn't work at all during the week. As I mentioned, they had some flexibility in which projects to work on. They wanted to take a pass on a job and show up next week instead, no problem. 602A1 says that's fine. And then they were also entitled to additional compensation if they worked more than 40 hours in a given week, and that's expressly permitted by 604A. Indeed, one of the examples that Section 604A provides of the principle is the fourth sentence of 604A. Similarly, the exemption is not lost if an exempt employee who is guaranteed at least 684 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal work week. That's exactly what was going on here. So where did the district court go off track? Well, the district court saw the word guarantee in 604A and thought, oh, well, guarantee means you need to be providing the minimum weekly salary even in weeks when the employee doesn't perform any work at all. And I think the mistake there was to miss the language that followed, the rest of the clause. What is it a guarantee of? It's a guarantee of at least the minimum weekly required amount paid on a salary basis. In order to figure out what paid on a salary basis means, you have to go back to 602A, which is what tells you when an employee will be considered to be paid on a salary basis within the meaning of this part. This part includes all of these regulations. And that definition in 602A includes the various provisos and clarifications and exceptions that follow, including the no work, no pay principle. And those all work together. That 602A definition and 604A work together, as this Court just said in the Gentry decision about ten days ago, to provide one path for satisfying the salary basis. Let me ask you about Gentry. In your view, I take it from what you just said, in your view, Gentry, I wouldn't say that it decides the case in front of us, but do you think it goes a long way towards deciding this question about the relationship of the two sections? I do think so, Your Honor. The Court in Gentry said 604A supplements 602A. It aids it. It made clear that there are two ways of satisfying salary basis tests following the Supreme Court in Helix. 602A and 604A is one path. 604B is the other path. So I think it did support our interpretation of how 602A and 604A interact. By contrast, the lower court's interpretation here essentially read the word guarantee in 604A to override all of the provisos and clarifications that you see in 602. And it's not just the no work, no pay principle. Imagine a situation where an employee is suspended for three days for a disciplinary infraction. Section 602 tells us, well, you can reduce that employee's pay, and that doesn't affect salary basis tests. He's still salaried. But I take it from the district court's analysis that the district court's interpretation would be no, that defeats the guarantee because you haven't paid that person for the time where he was suspended for the disciplinary infraction. So we think that's inconsistent with the text. It's also inconsistent with a whole set of cases, precedents from other circuits, that this court has cited approvingly, including the Coates decision from the Eighth Circuit, the Anani decision from the Second Circuit, both of which this court in Helix followed. And maybe even more telling than that, the Department of Labor has never suggested this interpretation. And again, these principles, the no work, no pay, and the ability to offer extras on top of the salary, they both go back to the very beginning of this regulatory scheme. And yet we don't have any indication from the DOL that they're inconsistent with each other or that they can't work together. Now, I think recognizing all of these problems, plaintiffs don't, as I said at the beginning, they don't actually defend the district court interpretation on this. Instead, they mostly make a different argument, which is they say, yeah, 602A, 604A, those are irrelevant here. This is actually a 604B case because plaintiffs are really hourly workers. They're not weekly salaried workers. Now, at the outset, as we said in the brief, the court doesn't have to reach that question. It's not the question that was certified for the 1292B interlocutory review. But the court is able to reach it. It is within the scope of the order. I'm not saying there's no jurisdiction. It's a discretionary judgment call. Gentry does speak directly to this issue. It's sort of instructive on the first question, but it's directly on point for this one. And I think it puts plaintiff's argument really to bed for the reasons we laid out in the 20HA letter last week. Gentry made clear that if you are getting a weekly salary that covers a normal work week and additional hourly compensation for time beyond that, that that's a 604A case. It's not a 604B case. Now, that wasn't true in Gentry because in Gentry, the employees were getting paid a weekly salary that only covered the first eight hours of work for the week. And the court said, well, that's not a weekly rate. Eight hours is one standard day of work. So this isn't really a weekly salary. And therefore, you are essentially an hourly worker governed by 604B. Here, though, salary covered 40 hours. That's what's in the offer letter. That's what the parties agreed to. And importantly, 40 hours is the standard FLSA work week. And so we're not aware of any case that has said hourly compensation for time beyond 40 hours somehow subjects you to 604B. And the Second Circuit in Anani is directly on point, again, our way. That was a case where the salary was guaranteed to cover the 44 hours a week. But the evidence was the plaintiffs routinely worked 60 or more hours. And the court said, well, it's a 604A case because you're being paid for a standard work week. It's actually a little bit more than a standard work week, 44 hours. And anything on top of that is permissible under 604A. So for those reasons, Your Honor, we think the court should vacate the decision below and remand. There is additional work that needs to be done on remand. So I'm not asking for anything beyond that. But that's what we'd request. If there's no further questions, I'll yield. Okay, Mr. Roth. Thank you very much. We'll see you back on rebuttal. Mr. Birch. Yes, Your Honor. Good afternoon and may it please the court. Granite's Retainer B plan does not ensure that workers will regularly receive each pay period a predetermined amount that represents their full weekly salary. It certainly doesn't guarantee that they will. In fact, Granite's plan guarantees that they won't. Therefore, this court should affirm, because Granite failed to provide these workers with, as the Supreme Court put it, a steady and predictable stream of pay week after week after week. Alternatively, the court should remand to the district court to answer the antecedent question presented by Helix, whether the alleged salary provided a true weekly rate. In fairness to the lower court, it did not have Gentry's confirmation that Helix and Section 602 and Section 604 require courts to take a hard look at whether Granite's purported salary truly compensates employees for a week's worth of work, or instead provides an artificial distinction between the salary and additional compensation. Do you have a question? I was just going to say, do you agree with counsel opposite that Gentry basically says the district court got the relationship between 602A and 604A wrong? If we are here . . . Well, in other words, the interlocutory question that was certified . . . Short answer, yes. Yeah, you got that wrong. Yeah, I don't want to quibble with you. Short answer is yes. The district court here determined that 604A creates a third path to compliance with the salary basis test. That's not something they argued. It's not something I argued. In fact, we both, I believe, argued against it. I don't think that's right, and now under Gentry, we know for sure. Well, I mean, that's why we have multiple panels of this court. You know, panels decide questions, and sometimes by the time you get up here, it's been decided. Right. What I hear you saying, I think what I hear both sides saying is that that's what's happened here. If the question is, does 604 provide an independent path for compliance as the lower court held, the answer is no. Okay. The question is whether or not it should be affirmed on a slightly different basis, and that's what I want to talk to you about. As my colleague tells you, that's not something that's required, right? I do have some concerns about how it can get remanded, but I'll get to those a little later on. Let's start by talking a little bit about what the salary basis test is, though. What the salary basis test does is it ensures that employees who are alleged to be employed in a bona fide executive, administrative, or professional capacity are, in fact, employed in that manner, right? It makes sure that these folks who are supposed to have the requisite status to be bona fide executive, administrative, or professional employees, in fact, enjoy the discretion to manage their own time. They're not paid by the hour. They're not paid by the job, right? They are, in fact, paid a salary. And a salary, both in the law and as a matter of common parlance, is linked to a stability. The stability and security of a weekly, monthly, or annual pay structure. The pay plan that Granite has that it uses for most of the workers, like my clients, it's V1 or X hour plan. It calls for a set amount of pay every single week, whether they work or not. But Granite's retainer B plan, the plan we're here about today, it fails to deliver. It isn't designed to create a stable and secure pay structure. Instead, it's an attempt to game the system. Granite claims to guarantee 40 hours worth of pay. Sure, it calls that a salary, right, sometimes. But that's what it is. They say it's a guarantee of 40 hours worth of pay. But that guaranteed number of hours is so far below these employees' actual normal work week as to be an illusion. For example, in 2019 as a whole, Colton Spears' normal work week was more than 80 hours. More than double the allegedly guaranteed hours. And there's a dispute about whether or not it was guaranteed or not. That's not part of this appeal, but just so you all know. But even if we spot them the guarantee, his normal work week was more than twice that. Thus, even under Granite's versions of the fact, most of his normal weekly salary depended on the number of hours that he worked. Because this kind of gross disparity between the alleged guarantee and the actual weekly take-home pay that was referenced both by the Supreme Court in Helix and this court in Gentry. When you have that kind of gross disparity, it makes it clear that what the employer really wants to do is just what the employer in Helix wanted to do. Which is neither pay a true salary nor pay overtime. And that's precisely what the FLSA prohibits. Granite actually wants even more. It says that it can just place these allegedly salaried employees on the shelf for weeks, even months at a time, and pay them nothing. Solely because it decides to do so. Again, that's not a steady and stable and predictable stream of pay week after week after week. Could you connect that argument? I think I hear what you're saying. Could you connect it up to the language of 604A? Because as I understand it, 604A is supposed to say, okay, you can be paid on a salary basis, but you can get additional compensation without losing the exemption, right? So why does this – let's assume everything you said is true. Why does this scenario somehow fall outside the language of 604A? Under 604A, the salary must reflect the quote – and this is in 604A, the heading, and 604-1, right? You must receive the quote, full salary for the week, right? The full salary for the week must reflect what you normally earn in a full work week, not some portion of it. That's exactly the same problem that we had in Gentry. At Gentry, it's even more obvious, right, because there they're only guaranteeing eight hours and the guys work 50, right? But here, it's no different. They're still guaranteeing some portion of the work week. And my friend says, oh, the FLSA adopts a 40-hour work week, and that's not true. What the FLSA does, it says when your work week is longer than 40 hours, you must pay non-exempt employees overtime. There's absolutely no limitation in the FLSA where they say your work week must be 40 hours and no more, or 50, or 80, or 20, right? And the regulation at 541-604A says you look to the normal work week, not a 40-hour work week, but the normal work week. And there's guidance going back to the beginning of time from the Department of Labor that what we're talking about there is the employee's normal work week. There's an example where the employee was normally scheduled for 42 hours in a week, and the employer guaranteed 33 and a third hours. And the Department of Labor ruled that's not a guarantee of his full weekly salary. His full weekly salary represents 42 hours. Now, of course you can pay for hours beyond the normal work week. I think next year you guys are going to have both Mardi Gras and the Super Bowl at around the same time, right? There's going to be demands on managers that aren't existent during other parts of the year. And during that part of time, they're like, look, I know you normally work 55 hours a week. There's going to be some 80-hour weeks coming up. We're going to pay you overtime for that. No problem, right? The law certainly allows that. But when you want to set the salary at below what the person actually earns for a normal work week, your only avenue is 541-604-B. Gentry makes that clear. And that's why it's maddening to me, but 604-B is an accommodation to employers. It allows them to guarantee less than the full weekly salary, provided that there's still this tolerance. It's that tolerance that makes it fair, right? Ask yourself, what did the Supreme Court say in Helix? What the Supreme Court said in Helix is between its two functions, between the guarantee and the tolerance, it makes it so that that pay plan operates like a salary. Because under 541-602-A, as it says, the full salary must be guaranteed. And as Gentry says, it's the full salary for the week, which for my clients in the Gentry case, would be something like 45 hours for one of them and 43 hours for the other one. And for my clients here, would be at a bare minimum, something like 52 hours a week, and for one of them, something north of 70 hours a week. And that's over the entire course of their career. And so look, I think it . . . Again, accepting that the 5 . . . Does 541-A create an alternate path? That can't survive. That reasoning cannot be adopted, in my opinion. But the lower court was rightly concerned that what Granite was trying to do was take advantage of an exemption without having to walk the walk of a true salary. After all, the whole purpose of the salary basis test is to prevent employees from neither providing a salary nor paying overtime. The lower court believed that, as we said, in addition to 602-A and 604-B, there's this third path under 604-A. That's wrong, but it was right about the fact that what the folks at Granite did was never guarantee them any work and thus any pay. The retainer B plan is inconsistent with any notion of a salary, and the court can rightly affirm on that basis. I heard my friends say, and they said it in their briefing as well, that any affirmance of the lower court's ultimate conclusion would be unprecedented. That's not right. The lower court cited precedent for them, and that's found at tab B of the appellate's appendix. In that case, it's called row B, Reynolds, the employer claimed to guarantee a set number of hours each pay period, just like Granite does, but in denying the employer's motion for summary judgment, the court noted that nothing showed that the employer was required to schedule the employees for 80 hours a week. Rather, that could just be a function of their current staffing needs. We know here that Granite did not schedule the plaintiffs for 40 hours every week, and we know it did not pay them unless they were both scheduled and work. That's not the only case. The Seventh Circuit reviewed a similar pay plan in a case called Tripp v. May. The citation to that is 189 F. 2nd. 198. In Tripp, just like the instance here, we had somebody that allegedly had a guaranteed salary with additional hourly pay over and above that. This contract did, in fact, call for there to be this minimum salary any time that the employee was placed on a field assignment, but the court said there's no requirement, and the facts showed that there was no requirement that they actually put them on a field assignment, so there was no guarantee of work and thus not pay. I want to circle back to the opinion letter that we talked about just a minute ago. It is a further clarification of why 541-604 is a benefit to employers. 604-B is a benefit to employers rather than a hindrance. In the opinion letter, which you can find if you want to look it up on Westlaw, one is 1988 Westlaw 583-268. In that case, the employee was supposed to work. His normal work was 42 hours. Shocker, not limited to 40 hours a week. His normal work was 42 hours, and when the Department of Labor said a guarantee of 33 and a third hours was not enough, it said, I'm comparing it to 42 hours. Let's think about what the en banc panel did in Helix. When Judge Ho, I believe it was Judge Ho, tried to figure out, okay, how could the employer come into compliance? He said, based on a day rate of 963, you could guarantee about four grand a week, right? If my friend is right, the answer is that you could guarantee something closer to $3,000. Maybe I wasn't there, so I may be wrong about this, but I find it highly unlikely that an en banc decision from the Fifth Circuit would say, hey, employers, here's how you can comply, and we're shooting over what you need, without telling them we're shooting over what you need. If you look at the solutions that the Helix court provided in the Supreme Court, they don't line up with my friend's interpretation that you can just guarantee some portion of the work week and call that the salary, and therefore claim advantage under 602. Mr. Bertsch, you earlier mentioned that at some point you wanted to get to some concerns you had if we remanded for some further proceedings. Is that right, Bill? On remand, we're mindful of the fact that the . . . and I had to learn this for this appeal, but even on an interlocutory appeal, the mandate rule, the law of the case, all that stuff can apply, right? And the concern we have, of course, is we argued, hey, you should look at 541-604-B. They said, hey, you should look at 541-602, right? We now have guidance. The court said it's 541-604, but it's 541-604-A, right? The concern is that it goes back down and you say, okay, 541-604-A does use the general salary basis rule to evaluate the guarantee, and the court thinks, okay, well, I'm stuck at evaluating whether or not there's compliance with 541-604-A regardless of the facts. That's the concern that we have. Again, if this is a . . . If we send it back for that, you don't want us . . . I think what you're saying is you don't want us to write an opinion that forecloses the argument you want to make on remand? Correct. Correct. Again, if you're asking me, hey, Rex, did the judge get it right when he said . . . there's a woman and a man . . . When they said it's 541-604-A, I would have to agree that it's not. That doesn't answer the question. I do want to add that the Fifth Circuit . . . I'm sorry, sir. No, no. I'm good. The Fifth Circuit has looked at this situation before, a case called York v. City of Wichita. York. It's 944 F. 2nd, 236 at 242. There, they noted that paying an hourly rate for hours worked, quote, beyond the regular schedule, not 40 hours, but beyond the regular schedule does not defeat the exemption. That matches up with the way 604-A and 604-B work. As Judge Higginbotham said in the Gentry case, right? 602 and 604-A work together because your normal weekly pay is already guaranteed, your full weekly pay, your full salary for the week. I'm having almost deja vu, listen to my friend talk today, because it sounds like the appellant in the Helix case, this is precisely the argument that the Department of Labor argued against in Helix and in the Gentry case, that you can just say, oh, we're slicing up your normal work week 60 hours and we're slicing it up so that 40 hours is guaranteed and the rest is subject to deductions. That's been improper since at least the 1954 regulations. Gentry confirms that nothing in section 604-A believes the employer of its obligation to pay a true salary. Gentry confirms a true salary cannot cover part of the employee's normal work week. It must represent compensation earned, quote, for all work performed that week, end quote. If we look at Granite's contracts, you can find one record on Appeal 3182, the salary doesn't even pretend to. The agreement states that he will be paid a weekly rate for up to 40 hours in a week. And not to beat a dead horse, but not one of my clients had a normal work week less than 52 hours, and most were much, much higher. Granite's resource manager, James Peeple, recognized that under the retainer B plan, the reality is that the employer receives an hourly rate for each hour worked. That's true. He even distinguished Granite's V1 pay plan, which actually calls for a regular payment every week, week after week. The decision here is admittedly narrow. The direct answer to the question that the court posed is no. If you do remand, it should be remanded for full review in light of Gentry and the remaining cases. Thank you very much, Your Honors. Thank you very much, Mr. Birch. Mr. Roth, you have four minutes. Thank you, Your Honors. Well, I take it we, my friend and I agree that the district court's analysis is not correct, certainly in light of Gentry. And so I think the easiest way to resolve this case is to vacate the decision below and remand, and that can be for arguments based on the new precedent that was decided. Do you quibble with sort of how he wordsmithed or described the contours of that remand? Well, I don't, I'm not sure I have it straight in my head exactly what he said. I think the analysis this court would do would be to say, here's what the district court said about the interplay between 602A and 604A. That was wrong for these reasons, and so it's remanded. And on remand, everything is going to be open because there's a new, there's intervening precedent in Gentry. And so I don't think anything is foreclosed. Now, I will say, well, I'd like to make two points because there was one thing that counsel said that did sound a little bit like a defense of the district court. So I'd like to address that, and then I'll hit the 604B point. The former, you know, I heard the comment that, look, this is not really a steady, predictable salary because they might not work for a month, and then they won't get paid for the month. I think the problem with that is that 602A1 explicitly contemplates that and says it's fine. So if the argument is, look, it can't be a real salary if you don't get it each and every week, that just can't be right under the regulations. Counsel said, contrast it with the V1 pay plan where the employees are paid each and every week, regardless of whether they work during the week. That's actually significant because the employees have the choice of which pay plan they prefer. The advantage of the V1 that he mentioned is you do get paid even if you don't work. The disadvantage is you don't get a choice. If there's a job, you've got to do it. The plan that these plaintiffs were on gave the employees flexibility. They could turn down a job, and the trade-off for that is you don't get paid if you don't work for the week. And again, 602A1 explicitly allows for that. So that, I think, goes a little bit to what the district court was saying. Most of counsel's presentation, not surprisingly, was about the 604B idea, and I take his argument to be if, on average, an employee works more than 40 hours a week and is paid on an hourly basis for the hours beyond 40, that that falls out of 604A and now you're into 604B. I don't think that's what the regulation says. The regulation referred... 604A refers to hours worked for work beyond the normal work week. It does not say the employee's usual work week, which, by the way, is language that's used in 604B. 604B talks about the employee's usual earnings and the employee's normal scheduled work week. There's a difference in the language that's used between 604A and 604B. And the FLSA standard is a 40-hour work week. Yes, that's because time on top of 40 is paid at time and a half. That's because it's overtime. It's overtime because it's not part of the normal work week. 40 hours is the normal work week. I'm not aware of any case anywhere that has said hourly compensation for work beyond 40 hours in a week is nonetheless governed by Section 604B. And, as I said earlier, the Second Circuit and Anani was exactly the same fact pattern. They were paid for the weekly salary covered 44 hours a week. The testimony was they regularly worked 60, 70, 80 hours a week. And the Court said it's still a 604A case. This Court in Gentry 10 days ago said we agree with Anani and we're following and aligning with Anani. So I don't think the argument works. I think it's pretty easy to see that, but it can also be dealt with on remand. Okay. Thank you, Your Honors. Mr. Roth, thank you. The Court thanks you both. And that's it for today's batch. And the Court will stand in recess until 1 p.m. tomorrow.